24434

Gary Michael WOODALL, Appellant v.
Mary Helen WOODALL, Respondent.

(471 S.E. (2d) 154)

Supreme Court

*Douglas K. Kotti,* Columbia, *for Appellant.*

*Michael S. Pauley* and *Marne Sherman,* both of *Lide, Montgomery & Potts,* Columbia, *for Respondent.*

*Leslie K. Riddle,* Columbia, *Guardian Ad Litem.*

Heard Mar. 6, 1996.

Decided May 20, 1996.

BURNETT, Justice:

Mary Helen Woodall (Wife) and Gary Michael Woodall (Husband) were married on May 11, 1990. Their only child, Lawrence Moultrie Woodall (Son), was born on October 14, 1990. After a brief marriage, the parties were separated on May 28, 1991. On appeal, Husband asserts the family court erred in (1) awarding custody of Son to Wife, (2) ordering standard visitation rights, (3) computing his child support obligation, and (4) awarding attorney's fees and costs to Wife.

## FACTS

Son was born premature and required special physical and emotional care. Wife, a certified public accountant, was not employed full time during the marriage, but did occasional part-time accounting work. She ultimately decided to return to college to become a mathematics teacher in order to have a less demanding career which would be more conducive to caring for Son. Husband holds a GED and maintained steady employment as a computer programmer throughout the marriage.

It is uncontroverted that Husband and Wife mistrusted each other and that their short marriage was fraught with arguments and accusations. Some of the altercations between the parties involved physical violence.

On July 12, 1991, the family court issued a *pendente lite* order which provided, *inter alia,* that the parties would share joint physical custody of Son and that Husband would make monthly child support payments in the amount of $185.00. The family court issued a second *pendente lite* order on May 27, 1993, which discontinued the child support payments and changed the times of the custodial periods. A final decree of divorce was issued on September 30, 1993, awarding full and

complete custody of Son to Wife, ordering standard visitation rights to Husband, and computing Husband's child support obligation to be 588.60 per month.

Wife incurred attorney's fees and costs in the amount of $36,155.00. On September 23, 1994, the family court issued an order requiring Husband to contribute $15,000.00 toward her attorney's fees and costs and requiring each party to pay one-half of the guardian *ad litem's* total bill—the total bill amounted to $7,308.75. Husband sought a new trial and/or alteration, amendment and vacation of the final decree. The family court disposed of Husband's posttrial motion by merely making minor modifications to the final decree. This appeal followed.

## ISSUES

Did the family court err in:

I. Awarding custody of Son to Wife?

II. Ordering standard visitation rights to Husband?

III. Computing Husband's child support obligation?

IV. Awarding attorney's fees and costs to Wife?

## DISCUSSION

When reviewing the factual determinations of the family court, an appellate court may take its own view of the preponderance of the evidence. *Hough v. Hough*, 312 S.C. 344, 440 S.E. (2d) 387 (Ct. App. 1994). However, where evidence is disputed, the appellate court may adhere to the findings of the trial judge, who saw and heard the witnesses. The trial judge was in a superior position to judge the witnesses' demeanor and veracity and, therefore, his findings should be given broad discretion. *McAlister v. Patterson*, 278 S.C. 481, 299 S.E. (2d) 322 (1982); *Hough v. Hough, supra; Sealy v. Sealy*, 295 S.C. 281, 368 S.E. (2d) 85 (Ct. App. 1988). Furthermore, the appellate court should be reluctant to substitute its own evaluation of the evidence on child custody for that of the trial court. *Stroman v. Williams*, 291 S.C. 376, 353 S.E. (2d) 704 (Ct. App. 1987).

### I. *Custody*

Husband contends that based upon the evidence presented, the family court abused its discretion in awarding custody of Son to Wife. In addition, Husband argues that the family

court erred in awarding custody on the basis of the "tender years doctrine."

The welfare and best interests of the child are paramount in custody disputes. The family court must consider the character, fitness, attitude, and inclinations on the part of each parent as they impact the child. *Epperly v. Epperly*, 312 S.C. 411, 440 S.E. (2d) 884 (1994). In addition, psychological, physical, environmental, spiritual, educational, medical, family, emotional and recreational aspects of the child's life should be considered. *Wheeler v. Gill*, 307 S.C. 94, 413 S.E. (2d) 860 (Ct. App. 1992). Thus, when determining to whom custody shall be awarded, all the conflicting rules and presumptions should be weighed together with all of the circumstances of the particular case, and all relevant factors must be taken into consideration. *Ford v. Ford*, 242 S.C. 344, 130 S.E. (2d) 916 (1963).

The "tender years doctrine," in which there is a preference for awarding a mother custody of a child of tender years, was abolished effective May 18, 1994.[1] However, when custody of Son was determined on September 30, 1993, the health, age, and sex of a child—often referred to as the "tender years doctrine"—were factors to be considered in awarding custody of a young child. *See Wheeler v. Gill, supra.*

In this case, when the family court ascertained what was best for Son, it did not rely exclusively upon the "tender years doctrine," but considered all applicable doctrines and tests. For example, the court examined the following factors: (1) which parent evolved as the primary caretaker; (2) the conduct, attributes, and resources of each parent; (3) the opinions of third parties, including the guardian *ad litem*; and (4) the age, health, and sex of the child. In the final decree, the family court decided that neither parent evolved as Son's primary caretaker. When considering the attributes and resources of each parent, the family court recognized that Wife was the better educated parent, but Husband had the larger residence. In addition, the court concluded that both parents would be able to spend a substantial amount of time with son.

The family court also considered the testimony offered by

---

[1] S.C. Code Ann. § 20-7-1555 (Supp. 1995).

several witnesses attesting to the fact that Wife was an honest and ethical person, as well as a conscientious mother who was totally prepared to meet the custodial needs of Son. Witnesses characterized Husband as a loving and caring father. In addition, after the guardian *ad litem* interviewed twenty-five persons, she concluded that each parent was a fit and capable caretaker making both equally fit to be the custodial parent. Nonetheless, because joint custody is presumed to be harmful to and not conducive to the best interest of a child, the court applied the "tender years doctrine" and determined that Wife should be the custodial parent.

The award of custody in this matter was a close call. Nevertheless, when determining the welfare and best interest of Son, the family court judge considered a wide range of topics including: each parent's character, fitness, attitudes, attributes and resources; the opinions of third parties; and the age, health, and sex of Son. The judge then weighed all of the circumstances together with the applicable doctrines. Accordingly, because the judge was in a unique position to observe the parties as well as to judge the credibility of the witnesses and resolve the conflicts in their testimony, we find no abuse of discretion.

## II. *Visitation*

The family court awarded visitation as follows: every other weekend, from 6:00 p.m. Friday until 6:00 p.m. Sunday; four weeks during the Summer months, to consist of two consecutive week periods; alternate Easter, July 4th, Labor Day, Thanksgiving, and Christmas Holidays; Husband was awarded visitation with Son every Father's Day; and Wife would have Son every Mother's Day. Husband claims this "standard" visitation schedule is unduly restrictive. We disagree.

When awarding visitation, the controlling consideration is the welfare and best interest of the child. *King v. Gardner*, 274 S.C. 493, 265 S.E. (2d) 260 (1980); *Hyde v. Hyde*, 302 S.C. 280, 395 S.E. (2d) 186 (Ct. App. 1990). As with child custody, the issue of child visitation falls within the discretion of the trial judge, and his findings will not be disturbed absent an abuse of discretion. *Cudd v. Arline*, 277 S.C. 236, 285 S.E. (2d) 881 (1981); *Hyde v. Hyde, supra.* Visitation that is analogous to divided custody is to be avoided. *Johns v. Johns*, 309 S.C. 199, 420 S.E. (2d) 856 (Ct. App. 1992).

The record establishes that Son appears to be the basis of many arguments between the parties. In fact, the parties quarrel in the presence of Son which causes difficulties when they effect visitation exchanges. Clearly, under these circumstances, it would not be conducive to the best interests and welfare of Son to be shifted and shuttled back and forth for alternate brief periods of time. We conclude that Husband has failed to establish that the visitation schedule awarded in this matter is unduly restrictive or that the judge abused his discretion.

### III. *Child Support*

Husband asserts that the family court erred by requiring him to pay monthly child support in the amount of $588.60. He contends that Wife voluntarily left the work force and, therefore, the child support calculation should be based on a determination of her potential income. Husband also argues that Wife's day care expenses should not have been included when computing the child support award.

The South Carolina Child Support Guidelines (Guidelines), codified at 27 S.C. Code Ann. Reg. 114-4710 to -4750 (Supp. 1995), govern all actions involving questions of child support. *Price v. Ozment*, 318 S.C. 168, 456 S.E. (2d) 427 (Ct. App. 1995). However, the family court retains a certain amount of discretion when making the final award. *Id; White v. Cook*, 312 S.C. 352, 440 S.E. (2d) 391 (Ct. App. 1994).[2] When calculating child support based upon a determination of potential income, the court may take into account the presence of young or handicapped children who must be cared for by the parent necessitating the parent's inability to work. 27 S.C. Code Ann. Reg. 114-4720(A)(5) (Supp. 1995).

The Guidelines rely primarily on the incomes of both parents. In the present case, the family court relied upon the financial declarations provided. It determined that Wife had a gross income in the amount of $385.00 monthly, and Husband had a gross income in the amount of $2,115.32 monthly, from which he set aside a pretax medical deductible in the amount of $70.00 per month. Husband also provided Son with medical insurance which cost him $50.74 per month. The court also

---

[2] Criteria for deviation from the Guidelines is described in 27 S.C. Code Ann. Reg. 114-4710(B) (Supp. 1995).

found that Husband was not paying monthly rent of $450.00 or monthly child care expenses or $200.00 as set forth in his financial declaration. Further, Husband's sister testified that he did not owe her $3,650.00 as he had set forth in his financial declaration.

Husband's financial declaration was included in the record on appeal. Although several child support obligation work sheets were included in the record, Wife's financial declaration was not provided, and no reference was made in the final decree to Wife's child care costs. Consequently, we cannot positively ascertain whether the family court considered these costs when calculating support obligations. Nevertheless, one of the work sheets appears to be based upon Wife's financial declaration. This work sheet includes "work related" child care costs of Wife in the amount of $346.00, and calculates Husband's child support obligation to be $588.60. Because Wife was a full-time student, her child care costs were not "work related."

Under these circumstances, we remand the issue of child support to the family court to determine whether Wife's child care costs were incorrectly calculated into the child support determination. Moreover, if Wife is presently employed, a change in circumstances may be established warranting review and modification by the family court of Husband's child support obligation.

### IV. *Attorney's Fees and Costs*

Husband maintains that the family court erred in ordering Husband to pay counsel for Wife the sum of $15,000.00 in attorney's fees—Wife's total attorney's fees amounted to $36,155.00. We disagree.

Award of attorney's fees and costs is within the sound discretion of the family court judge. *Perry v. Perry*, 315 S.C. 373, 433 S.E. (2d) 911 (Ct. App. 1993). The determination of attorney's fees in connection with divorce proceedings requires consideration of the following factors: the nature, extent, and difficulty of the services rendered; the time necessarily devoted to the case; the professional standing of counsel; the contingency of compensation; the beneficial results accomplished; and the customary fees charged for similar legal services. *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E. (2d) 313 (1991).

Two hearings were held concerning this issue at which counsel for Wife testified and submitted documents verifying the costs incurred for litigating divorce and custody issues. Two independent expert witnesses testified concerning the reasonableness of the fees billed. Husband testified and submitted pertinent documents.

The family court applied the *Glasscock* factors to the circumstances in this matter and made the following conclusions. Husband necessitated and insisted upon a merits hearing requiring Wife's attorney to aggressively prepare for a lengthy trial. In addition, the services of Wife's attorney were necessary to achieve favorable results, and Wife's attorney charged a reasonable and customary rate and expended a reasonable number of hours. Husband was employed full time and Wife, a full-time student, was not. Husband had the capacity to contribute, and Wife did not. Husband had more assets than Wife. The judge also questioned the credibility of certain entries on Husband's financial declaration, and he concluded that Husband's allegations concerning Wife were unfounded. Nevertheless, the judge determined that by requiring Husband to contribute to Wife's fees, his standard of living would be affected. Hence, even though the judge concluded that Husband should pay all of the expenses incurred by Wife, due to his financial ability, the judge ordered Husband to pay a portion of them.

After careful review of the record, we conclude that the judge did not abuse his discretion in awarding attorney's fees.

For the foregoing reasons, the decision of the family court is

Affirmed in part and remanded in part.

FINNEY, C.J., and TOAL, MOORE, and WALLER, JJ., concur.